IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| RONALD RAGAN JR.<br>5908 E 101 Street<br>Kansas City, MO 64134,<br><br>    Plaintiff,<br><br>v.<br><br>BERKSHIRE HATHAWAY<br>AUTOMOTIVE GROUP, INC.<br>A Delaware Corporation<br>(Serve Registered Agent:<br>    C T Corporation System<br>    120 South Central Ave<br>    Clayton, MO 63105,)<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:18-cv-01010-HFS |

**FIRST AMENDED COMPLAINT**

Plaintiff for his cause of action against Defendant, alleges as follows:

**NATURE OF THE ACTION**

Plaintiff brings claims against Defendant seeking monetary damages and injunctive relief for violations of the Copyright Act, 17 U.S.C. §501 et seq.

**THE PARTIES**

1. Plaintiff Ronald Ragan, Jr. is an individual who is domiciled at 5908 E 101 Street, Kansas City, Missouri 64134.

2. Defendant Berkshire Hathaway Automotive Group, Inc. (hereinafter referred to as "BHA") is a Delaware corporation engaged in the automotive dealership

1

business. BHA is a subsidiary of Berkshire Hathaway, Inc. (hereinafter referred to as "Berkshire"). Defendant BHA's principal place of business is located at 8333 Royal Ridge Parkway, Suite 130, Irving, Texas 75063, but maintains a registered agent for service of process in the State of Missouri, namely C T Corporation System, 120 South Central Ave, Clayton, Missouri 63105.

## JURISDICTION AND VENUE

3. This Court has Federal question jurisdiction pursuant to 28 U.S.C. §1331.

4. This Court has original jurisdiction pursuant to 28 U.S.C. §1338(a).

5. This Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. §1367(a) in that any state law claims are so related to the claims over which the court has original jurisdiction that they form part of the same controversy.

6. This Court has personal jurisdiction over Defendant pursuant to R.S.M.o. §506.500 because Defendants are corporations who transacts business within the state of Missouri; Defendants intentionally committed the tortious acts described herein which caused harm within this jurisdiction of this Court; and Defendant should have reasonably anticipated being haled into court in this jurisdiction through its actions.

7. Venue is proper under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

# FACTUAL ALLEGATIONS

8. At all times mentioned herein, Defendant acted by and through their duly-authorized agents and/or servants and/or employees, all of whom were acting within the course and scope of their agency or other relationship with Defendant.

*Plaintiff's Guest Sheet*

9. Plaintiff is the owner of **The Art of Sales**. The Art of Sales provides recruitment, hiring, and training services for automotive dealerships.

10. During the course of his business Plaintiff created an original, creative work called the **Guest Sheet**. Plaintiff's Guest Sheet and Certificate of Registration are attached as Exhibit A.

11. Plaintiff's Guest Sheet is a questionnaire comprised of five categories of questions: (1) The Guest's personal information (Name, address, telephone number, and place of work), (2) How Did You Hear About Us?, (3) Vehicle Considered, (4) Trade Info, and (5) Drive Home Today Budget.

12. The Guest Sheet is a sales tool created to assist a car salesman in the sale of an automobile.

13. Plaintiff's Guest Sheet was registered in the United States Copyright Office under registration number TXu 913-170 on June 3, 1999.

*The Van Tuyl Group, Inc. ("Van Tuyl")*

14. Prior to their acquisition by Berkshire, Van Tuyl was the nation's largest privately-owned auto dealership group and fifth largest among all U.S. auto dealership groups.

15. Van Tuyl was made up of two legal entities: V.T. Inc. and Automotive Investment Group ("AIG").

16. The auto dealership group consisted of 78 dealers, with locations in 10 states.

17. Van Tuyl followed a strategy that made all local managers owner-partners of the dealership. This strategy created a mutuality of interests between the company and managers that proved to be successful.

18. As of January 12 2015, Van Tuyl Group, Inc. is an "Inactive" entity according to the State of Arizona because it was converted to another entity.

### *Berkshire Hathaway Automotive Group, Inc. ("BHA")*

19. In the first quarter of 2015, Berkshire acquired the Van Tuyl Group, which included 81 automotive dealerships located in 10 states as well as two related insurance businesses, two auto auctions and a distributor of automotive fluid maintenance products.

20. After the acquisition, the Van Tuyl Group was renamed to Berkshire Hathaway Automotive Group, Inc. ("BHA").

21. BHA is one of the largest automotive retailers in the United States, currently operating 108 new vehicle franchises through 82 dealerships located primarily in major metropolitan markets in the United States.

22. BHA owns and operates dealerships in: Arizona, California, Florida, Georgia, Illinois, Indiana, Missouri, Nebraska, New Mexico, and Texas.

23. BHA owns and operates the following automobile dealerships in the state of Missouri:

a. Audi of Springfield located in Springfield, MO;
   b. BMW of Springfield located in Springfield, MO;
   c. Elite Automotive Group located in Springfield, MO;
   d. Infiniti of Springfield located in Springfield, MO;
   e. Reliable Chevrolet located in Springfield, MO;
   f. Reliable Hyundai located in Springfield, MO;
   g. Reliable Imports located in Springfield, MO;
   h. Reliable Lexus located in Springfield, MO;
   i. Reliable Mazda located in Springfield, MO;
   j. Reliable RV located in Springfield, MO;
   k. Reliable Subaru located in Springfield, MO;
   l. Reliable Toyota located in Springfield, MO;
   m. Van Cadillac located in Kansas City, MO;
   n. Van Chevrolet located in Kansas City, MO; and
   o. Van Subaru located in Kansas City, MO.

24. BHA's dealerships sell new and used vehicles, vehicle maintenance and repair services, extended service contracts, vehicle protection products and other aftermarket products.

25. BHA also develops, underwrites and administers various vehicle protection plans as well as life and accident and health insurance plans sold to consumers through BHA's dealerships and third party dealerships.

26. BHA also develops proprietary training programs and materials, and provides ongoing monitoring and training of the dealership's finance and insurance personnel.

27. At least some, if not all, of BHA's dealerships in Missouri make use of Plaintiff's Guest Sheet.

28. At least some, if not all, of BHA's dealerships across the country make use of Plaintiff's Guest Sheet.

## *Infringement of Copyright of Plaintiff's Guest Sheet*

29. On or about 2000, Van Tuyl copied Plaintiff's Guest Sheet and created a virtually identical form, which they also refer/referred to as the Guest Sheet.

30. Van Tuyl routinely used the Guest Sheet across their automotive dealerships to assist in their sale of automobiles.

31. Van Tuyl neither had, nor has, any right to copy, reproduce, distribute, modify, or make derivative works of Plaintiff's Guest Sheet or to grant any other person the right to copy, use, reproduce, distribute, modify, or make derivative works from Plaintiff's Guest Sheet.

32. On or about 2000, Plaintiff notified Van Tuyl they were infringing on his copyrighted Guest Sheet.

33. On or about July 13, 2000, AIG filed a lawsuit against Plaintiff in the United States District Court for the District of Arizona under Case No. 2:00-cv-o1341-SMM.

34. AIG brought the action seeking, among other things, a declaratory judgment that AIG was not infringing on the copyright of Defendant and that copyright registration TXu 913-170 is void, invalid, and unenforceable.

35. On June 20, 2001, AIG's lawsuit was dismissed by the Court for lack of personal jurisdiction.

36. On or about June 20, 2001, Plaintiff believed that Defendant Van Tuyl had stopped using his Guest Sheet.

37. Unbeknownst to Plaintiff, Van Tuyl continued to make use of Plaintiff's Guest Sheet after June of 2001.

38. After the acquisition of Van Tuyl, BHA continued the use of Plaintiff's Guest Sheet.

39. Defendant BHA neither has, nor had, any right to copy, reproduce, distribute, modify, or make derivative works of the Guest Sheet or to grant any other person the right to copy, use, reproduce, distribute, modify, or make derivative works from the Guest Sheet.

40. On or about August of 2017, Plaintiff learned that BHA was continuing to make use of his Guest Sheet.

41. On or about August 10, 2017, BHA was made aware of Plaintiff's allegations that their guest sheets were infringing on Plaintiff's copyright Guest Sheet.

42. On September 12, 2017, BHA admitted there are several variations of "guest sheets" in use among their various dealerships.

43. On November 30, 2017, BHA falsely informed Plaintiff they were modifying their guest sheets to be clearly outside of any conceivable copyright infringement claim. In addition, BHA informed Plaintiff it was BHA's intention to continue to use their guest sheets in the future.

44. BHA's use of Plaintiff's Guest sheet constitutes a willful infringement of Plaintiff's copyright.

### *Damages to Plaintiff and his Guest Sheet*

45. Van Tuyl and BHA's use of Plaintiff's Guest Sheet has caused Plaintiff to suffer damages, including, but not limited to:

   a. Plaintiff's loss of income from licensing fees;

   b. Plaintiff's loss of marketing value of the Guest Sheet; and

   c. BHA's profits which are attributable to the infringement of Plaintiff's Guest Sheet.

### **Count One: Copyright Infringement**

Plaintiff incorporates, as though fully set forth herein, each and every allegation in the preceding paragraphs above.

46. The Guest Sheet is an original creative expression that is protected by the Copyright Act.

47. Plaintiff is the exclusive owner of the Guest Sheet.

48. Plaintiff's Guest Sheet was registered with the U.S. Copyright Office under registration number TXu 913-170.

49. The effective date of registration is June 3, 1999.

50. Plaintiff did not learn of Defendant's infringement until after the copyright was registered.

51. Defendant has reproduced, and is currently reproducing, all, or some constituent elements of the Guest Sheet without authorization of Plaintiff.

52. Plaintiff has been damaged as a result of Defendant's unauthorized reproduction and use of the Guest Sheet and is entitled to Defendant's profits as a result of its infringement.

## Jury Demand

53. Plaintiff hereby demands a jury trial on all issues so triable.

## Prayer for Relief

WHEREFORE, Plaintiff prays for judgment with respect to its Complaint as follows:

(i) the Court declares that Defendant has been and is infringing on Plaintiff's valid copyright of his Guest Sheet, and that such infringement has been and is willful;

(ii) awarding Plaintiff actual damages suffered as a result of Defendant's infringement;

(iii) awarding Plaintiff any profits of Defendant that is attributable to Defendant's infringement;

(iv) awarding Plaintiff statutory damages for Defendant's copyright infringement;

(v) awarding Plaintiff any and all other damages recoverable under contract, applicable law, or statute;

(vi) awarding Plaintiff pre- and post-judgment interest on all damages recovered or awarded to Plaintiff;

(vii) awarding Plaintiff his attorneys' fees, costs, and expenses as permitted by the Copyright Act and DMCA;

(viii) ordering a permanent injunction pursuant to 17 U.S.C. §502(a) prohibiting Defendant from continuing to use Plaintiff's Guest Sheet; and that

(ix) this Court grant Plaintiff such other and further relief at law or in equity as this Court shall deem just and proper.

THE ACCURSO LAW FIRM
A Professional Corporation

/s/Louis C. Accurso
Louis C. Accurso    #29827
4646 Roanoke Parkway
Kansas City, Missouri 64112
PH:   (816) 561-3900
FAX:  (816) 561-2992
laccurso@accursolaw.com
**ATTORNEYS FOR PLAINTIFF**
